FRANK L. MOFFETT and Another v. SAMSON PARKER and Others.[1]

January 12, 1898.

Nos. 10,781—(210).

**Mortgage—Assignment as Collateral Security—Notice of Equities— Judgment Creditor—Findings Sustained by Evidence.**

*Held,* that the evidence sustains the finding of the trial court to the effect that the defendant Broker, as trustee in fact, took an assignment of the mortgages here in question, to secure a loan then made in good faith, and without notice of any equities in favor of the plaintiffs or of the mortgagors.

**Same—Rights of Assignee and Equities of Third Parties.**

A mortgage has none of the privileges of negotiable paper, but is a mere chose in action, which an assignee takes subject to any defense existing between the original parties, unless they are estopped by their acts or otherwise from asserting it as against the assignee; but he does not take it subject to any equities of third parties of which he has no notice.

**Same—Mortgage Given to Defraud Creditors and without Consideration—Enforcement—Estoppel.**

A mortgage given to defraud creditors, and without consideration, cannot be enforced as between the parties thereto; but as between a purchaser thereof in good faith for value, without notice, and the dishonest mortgagor, it may be enforced, for he is equitably estopped as against such assignee to interpose the defense of want of consideration.

Appeal by plaintiffs, as executors of the estate of James B. Moffett, deceased, from a judgment entered in the district court for Hennepin county pursuant to the findings and order of Smith, J. Affirmed.

[1] Reported in 73 N. W. 850.

*James I. Best* and *Eugene N. Best*, for appellants.

A mortgage is a chose in action and an assignee takes it subject to all defenses that exist between the original parties. Johnson v. Carpenter, 7 Minn. 120 (176); Redin v. Branham, 43 Minn. 283; Oster v. Mickley, 35 Minn. 245. As against a bona fide assignee the mortgagor may show that the mortgage was executed without consideration, and may enjoin its foreclosure or defend an action to foreclose, notwithstanding that it was also made to defraud the creditors. Hostetter v. Alexander, 22 Minn. 559; Oster v. Mickley, supra; Devlin v. Quigg, 44 Minn. 534. A judgment creditor who has acquired a lien may set aside a previous fraudulent conveyance. Wadsworth v. Schisselbauer, 32 Minn. 84. Since, therefore, a judgment creditor who has acquired a lien upon the property embraced within the mortgage may, as against the mortgagee, set aside the mortgage as without consideration and fraudulent, he may also set it aside against an assignee; for the mortgage is a mere chose in action and the assignee takes it subject to all equities.

*Albert G. Broker*, for respondents.

The rule that the assignee of a mortgage takes it subject to all equities and defenses does not extend to the equities of third persons whose rights are external to the mortgage. Clarke v. Forbes, 9 Neb. 476; Sleeper v. Chapman, 121 Mass. 404; Himrod v. Gilman, 147 Ill. 293; Mott v. Clark, 9 Pa. St. 399; Croft v. Bunster, 9 Wis. 503; Bloomer v. Henderson, 8 Mich. 395; Trustees v. Wheeler, 61 N. Y. 88; Leqve v. Smith, 63 Minn. 24.

START, C. J.

Action by plaintiffs, as judgment creditors of the defendants Samson and Hannah R. Parker, to have canceled the mortgages hereinafter referred to, with the records thereof, given by them upon the premises described in the complaint. Judgment (from which the plaintiffs appealed) was rendered in their favor, for the relief prayed, upon condition that they first pay to the defendant Broker, as trustee of the Merchants' National Bank of Wadena, $3,500 and interest.

The facts as found by the trial court are: On July 8, 1896, the plaintiffs, upon an indebtedness which accrued December 15, 1893,

recovered and docketed a judgment against the Parkers, each of whom is insolvent, for $1,239.11, upon which an execution has been returned wholly unsatisfied. On December 27, 1895, James J. Lee held a mortgage on the premises, which was duly recorded, for $800, made by the Parkers to him, which they then paid; but, for the purpose of continuing the mortgage on the premises with the intent of hindering and delaying the plaintiffs in the collection of their demand, they caused the mortgage to be assigned by Lee to their son, Warren E. Parker, and the assignment was recorded January 2, 1896. On February 26, 1896, the Parkers also gave to Warren E. Parker a mortgage on the premises for $4,000, and on the same day they caused it to be duly recorded. This mortgage was executed without any adequate consideration, to secure a pretended indebtedness of $4,000, and with intent on the part of the mortgagors and the mortgagee to defraud creditors, and particularly the plaintiffs, by creating an apparent lien on the premises.

Before the plaintiffs recovered their judgment, and on May 22, 1896, Warren E. Parker borrowed $3,500 from the Merchants' National Bank of Wadena, and, for the purpose of procuring and securing such loan, duly assigned the two mortgages to the defendant Broker, to be held in trust for the bank, as security for the money so borrowed. This assignment was duly recorded May 29, 1896. Neither Broker nor the bank then had any knowledge or notice of the frauds in connection with the mortgages, or either of them, but they took such assignment and received the mortgages as such collateral security in good faith and without notice.

1. The correctness of the findings of fact is not challenged, except in two particulars. It is claimed: First, that the trial court erred in not finding that the $4,000 mortgage was given without any consideration. The finding is that it was given without any adequate consideration, which is, we assume for the purposes of this appeal, the equivalent of a finding that the mortgage was made without any consideration; and, second, that the finding to the effect Broker, as the trustee of the bank, was in fact a purchaser of the mortgages in good faith for value, without notice, is not supported by the evidence. The burden of establishing the fact was upon Broker and the bank. The point is made that the evi-

dence received in support of the finding was not admissible under the pleadings. No such objection was made at the trial, but simply the objection that the evidence was immaterial, which was insufficient to call the court's attention to the pleadings. Besides, the record shows no exception to the ruling of the court. We have considered the evidence, and hold it sufficient to support the finding in question.

2. The remaining assignments of error are to the effect that the trial court erred in its conclusion of law that Broker, for the bank, was entitled to a lien on the premises by virtue of the assignment of the mortgages to him, to the extent of $3,500 and interest, which was superior to the lien of the plaintiffs' judgment; or, in other words, that the judgment, in so far as it requires the payment by the plaintiffs to the bank of the amount of its loan, as a condition of having the mortgages canceled as to it, is not supported by the facts found.

The real question is, then, whether the bank is equitably entitled to hold as against the plaintiffs the $4,000 mortgage to secure its loan of $3,500. If it is, then it is wholly immaterial whether it is entitled so to hold the $800 mortgage; for, if it be conceded that it is not, still the fact remains that the $4,000 mortgage exceeds the bank's claim, and the cancellation of the $800 mortgage would not affect its lien for the full amount of its claim, or subordinate its lien to that of the plaintiffs' judgment. It would seem, however, that the $800 mortgage, having been assigned and delivered to Warren E. Parker at the request of the mortgagors, for the purpose of continuing it as a mortgage on the premises to defraud creditors, should be treated as a mortgage made to him without consideration, to defraud creditors. Be this as it may, the conclusion we have reached renders it unnecessary to refer further to the $800 mortgage.

It is the settled law of this state that a mortgage has none of the privileges of negotiable paper, but is a mere chose in action; hence an assignee thereof takes it subject to any defense that exists between the original parties, unless they are equitably estopped by their acts, or otherwise, from asserting it as against the assignee. But it does not follow from this proposition that the plaintiffs

have any equity superior to the bank to have the mortgage canceled, for it is equally well settled, at least in this state, that the assignee of a mere chose in action or of past-due negotiable paper takes it subject to the equities of the original parties thereto, but not as to any equities of third parties of which he has no notice. Newton v. Newton, 46 Minn. 33, 48 N. W. 450; Plymouth v. Seymour, 67 Minn. 311, 69 N. W. 1082.

Now, the plaintiffs had the equitable right to subject the premises in question to the payment of their claim against the mortgagors, and to have the mortgage canceled as against the mortgagee. But this was an equity external to the mortgage. They were not parties to it, and the bank parted with its money in reliance upon the mortgage and the assignment thereof in good faith, without any notice of the equity of the plaintiffs. Therefore the equity of the former, as between it and the plaintiffs, is the superior. But the plaintiffs' equity against the mortgagors and mortgagee is clear, and if the bank cannot retain and enforce the $4,000 mortgage, to the extent of the loan against the mortgagors, the plaintiffs are also entitled to have the mortgage canceled as to the bank as well, for, if the bank has no equity as against the mortgagors which it can enforce, then the cancellation of the mortgage cannot injure it.

This brings us to the pivotal question in this case: Has the bank the equitable right to enforce this mortgage to the extent of its loan against the mortgagors? It must be conceded that, if the mortgagee had attempted to enforce this mortgage, the mortgagors could defeat his action by showing want of consideration, although the mortgage was executed for the purpose of defrauding their creditors. It was held in Bickford v. Johnson, 36 Minn. 123, 30 N. W. 439, that a mortgagee in a chattel mortgage given without consideration, for the purpose of defrauding the creditors of the mortgagor, could not enforce his mortgage. The case of Stevens v. McMillin, 37 Minn. 509, 35 N. W. 372, seems to introduce a discordant note, and to hold to the contrary; but the matter was fully and finally considered in Devlin v. Quigg, 44 Minn. 534, 47 N. W. 258, and the conclusion reached that a mortgagor in a real-estate mortgage given without consideration, to defraud creditors, might

enjoin its foreclosure by the mortgagee. In so deciding, the court did not disregard the rule that courts will not exert their powers to extricate parties from the consequences of their dishonesty. On the contrary, the decision rests upon the principle that parties to a contract will not be permitted to show its dishonest character as between themselves. Neither will be allowed to prove his own turpitude for the purpose of cheating the other. So when the mortgagor, in an action by the mortgagee to foreclose the mortgage, establishes the fact that there was no consideration for the mortgage, the mortgagee cannot be permitted to rebut this defense by showing that the mortgage was made and received for the purpose of defrauding creditors.

The reasons why a fraudulent mortgagee may not enforce a mortgage given without consideration to defraud creditors do not apply to a bona fide assignee without notice, who has parted with his money for the mortgage. It will not do to group the general rules we have referred to in the form of a syllogism, and reason thus: The assignee of a mortgage takes it subject to any defense existing between the original parties. The mortgagor who gives a mortgage without consideration, to defraud his creditors, may plead and prove, as against the mortgagee, the want of consideration as a defense. Therefore the assignee (the bank in this case) cannot enforce this mortgage against the mortgagors for any amount.

The defect in this logic is that it is not always true that the assignee of a mortgage takes it subject to defenses between the original parties. The conduct and acts of a mortgagor may be such as equitably to estop him from asserting a defense against the assignee which would be open to him as against the mortgagee. Where one, by his willful or fraudulent conduct, causes another to believe in the existence of certain facts, who is thereby induced to act on the belief, and does so in good faith, and parts with his money in reliance thereon, the former is estopped from denying the existence of such facts. Tousley v. Board, 39 Minn. 419, 40 N. W. 509.

Now, in this case, if the bank brings an action against the mortgagors to enforce this mortgage, if they answer that the mortgage was given without consideration, the bank will not be in the posi-

tion of the fraudulent mortgagee, who would not be permitted to show the real transaction, because it would be alleging and proving his own turpitude, but the bank may, in rebuttal, allege and prove the facts as to the making of the mortgage and its purchase of it, as found by the trial court. The whole dishonest transaction may be given in evidence. Such facts show, upon the plainest principles of morals and equity,—they are identical,—that the mortgagors are equitably estopped from claiming, as against the bank, that there was no consideration for the mortgage given to defraud their creditors.

We are not dealing with a case where the maker of a note or mortgage has through no fault of his own been induced to give it without any consideration. In such a case he is not estopped, by a recital under his hand and seal that the instrument was given for a valuable consideration, to show that such was not the fact. But we are dealing with a case where the mortgagors, for the dishonest purpose of defrauding their creditors, willfully and fraudulently represented, under their hands and seals, that they owed the mortgagee $4,000, and that they gave him a lien on their real estate to secure its payment. And, further, for the purpose of making it appear to the world that such indebtedness and lien in fact·did exist, they, as the trial court found, themselves caused this representation to be spread upon the public records, there to remain a continuing declaration that it was an honest mortgage. They also delivered this solemn and formal representation to the mortgagee, for the purpose of furthering their design of defrauding their creditors. For this dishonest purpose they put it in his power to cheat honest men. The bank, in reliance upon these representations, the mortgage and its record, in good faith and without notice parted with $3,500.

Shall the honest assignee of this mortgage or the dishonest mortgagors suffer this loss? Our answer is, the mortgagors. It would be a reproach to the administration of justice to hold otherwise. They are estopped as against the assignee from asserting the defense that the mortgage was executed without consideration, in order to defraud their creditors. In so holding, we do not

impinge upon the rule that a mortgage is a nonnegotiable chose in action.

So far as we are advised, there are but few adjudged cases upon this question. We have not been referred to any opposed to the conclusion reached. The case of Bloomer v. Henderson, 8 Mich. 395, was one where an action was brought against the mortgagor, mortgagee and assignee to set aside a real-estate mortgage, on the ground that it was given to defraud the plaintiff, and without consideration. It did not appear that there was any negotiable note connected with the mortgage, and it was treated as a chose in action, and held that the assignee took the mortgage subject to all equities existing between the mortgagor and the mortgagee, but not as to any equities of the plaintiff; and, further, that the mortgagor could not set up, as against the assignee in good faith, that the mortgage was given to defraud creditors, and without consideration. Christiancy, J., speaking for the court, said, at page 404:

"He [the mortgagor] at least cannot be heard to complain if an assignee has chosen to act upon the presumption that it was executed for an honest purpose, and by an honest man. To hold otherwise would be to encourage fraud, rather than to suppress it."

The case cited is not directly in point, as it was also disposed of upon the further ground that it was intended by the mortgagor that the mortgagee should sell the mortgage. See, also, the case of Sleeper v. Chapman, 121 Mass. 404, wherein it was held that the assignee, without notice, of a mortgage given in fraud of creditors, acquires a good title against the creditors of the mortgagor. The bank, having the equitable right to enforce the mortgage against the mortgagors to the extent of its loan, and its equity being superior to that of the plaintiffs to have it set aside, it follows that the judgment must be affirmed.

So ordered.

CANTY, J.

I concur in the result arrived at, but not in all that is said in the foregoing opinion. An examination of the decisions of this court therein referred to will not, in my opinion, warrant the conclusion attempted to be drawn from them. This case simply shows the

beautiful workings of a doctrine that a mortgage is a mere chose in action, which does not partake of the negotiability of the note which it secures, when that doctrine is carried to its full extent. But that doctrine has been too long upheld by this court to be now overruled. However, its evil workings should be curbed as much as possible by engrafting on it such exceptions as sound, equitable principles dictate.

As one of these exceptions, it should, in my opinion, be held that when the mortgagor, with intent to defraud his creditors, places a mortgage on his property, he should, as against the mortgagee's assignee in good faith and for a valuable consideration, be estopped from asserting that there was no consideration for the mortgage. A party is often estopped by his acts done with a fraudulent, malicious or wrongful intent, when he would not be estopped by the same acts when done innocently and without any such intent. He may also be estopped as against one who he knew was likely to be injured, though the specific intent was to injure some one else. The mortgagor's specific intent was to injure his creditors, but his act injures an innocent purchaser from the mortgagee, as the mortgagor well knew it was likely to do. He is therefore estopped to assert, as against such assignee, that there was no consideration for the mortgage; and the mortgage, being good as against the mortgagor, is, in such a case as this, good against third parties.