# HATTIE SAUNDERS v. COMMERCIAL CREDIT TRUST.[1]

July 20, 1934.

No. 29,820.

[1]Reported in 256 N. W. 142.

*Stinchfield, Mackall, Crounse, McNally & Moore,* for appellant.
*Samuel Dolf,* for respondent.

HOLT, Justice.

Defendant appeals from an order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action was brought for the conversion of a Graham-Paige automobile, of which plaintiff claimed ownership. About October 3, 1928, plaintiff, then the wife of A. Saunders, owned a Hudson car, registered in her name. Through the efforts of a salesman of the Powers Motor Company, she came to its place of business, accompanied either by her husband or by one Rufus Wiley, who pretended to be her husband, and after some bargaining the Hudson car was traded in for a Graham-Paige car, which the company for several months had used as a demonstrator. Plaintiff transferred the registration card of her Hudson to the Powers Motor Company, and it transferred the registration card of the Graham-Paige car to her. Upon a printed conditional sales contract, containing blank spaces for price and terms, and a printed promissory note containing also spaces to be filled, except that the salesman wrote therein the figures 12 and $66.70, the person with plaintiff signed the name A. Saunders. The note was attached to the contract. The blank spaces were left unfilled because of the absence from the office of the typewriter operator, according to the testimony of Mr. Klohn, the salesman. From Klohn's testimony the jury could infer that the typewriting upon the note had not been done when A. Saunders' name was appended. It was understood by plaintiff that the transaction had to be financed by some company. With the figures written in the note it, in effect, read that 12 monthly instalments of $66.70 each were to be paid. At the same time an invoice was given the purchaser of the Graham-Paige car, stating the price to be $1,010, crediting thereon by the Hudson car $335, and stating a balance of $675. On the invoice appeared the letters "C. C. T." Defendant claimed that the price to be paid was $1,135 less $335 for

the car traded in, making a balance to be paid by the 12 monthly instalments of $800.40. Defendant claims that the purchaser was to pay $125 for the expense of financing the deal. It admits that the price of a new car, of the same type as the one sold, was $1,010. The claim of plaintiff was that the price named was to include financing, since the car had been used for some months. Plaintiff also claimed that the car was fully paid for when, on October 12, 1929, defendant without her knowledge or consent took it away from the garage in St. Paul where she had left it; and she furthermore claimed that earlier in October defendant had agreed to extend the time for the payment of any balance that might be due until October 16, 1929. The court submitted the issues in a short, succinct charge, to which no exception was taken either at its delivery, or in the motion for a new trial; but defendant moved for a directed verdict. There was a verdict for plaintiff for $684.64.

Of the many assignments of error we cannot consider those which challenge the instructions of the court, for, as stated above, no exceptions were taken thereto in the trial court. However, defendant by proper objections and exceptions to the reception and rejection of evidence is in position to raise all questions of any merit in the case in this court. The issues as submitted by the court were: Was plaintiff the purchaser of the Graham-Paige car? What was the price to be paid after crediting $335 thereon for the Hudson car? Had the full purchase price been paid for the car prior to its repossession by defendant? Did defendant agree to extend the time of payment of any balance that might be unpaid until October 16, 1929? What was the value of the car when taken from plaintiff?

If the evidence received was admissible there was sufficient to justify the submission of each issue above named. The two subjects concerning which the contention as to the admissibility of evidence is in dispute are: (a) The admission of oral testimony that plaintiff was the real purchaser of the car, although her husband's name is signed to the contract; and (b) the admission of like testimony to show that the price agreed upon was other than the one typed in the conditional sales contract. It was conceded

that defendant had succeeded to the rights of the vendor in the conditional sales contract.

Was oral testimony admissible to show that plaintiff was the real vendee although her husband's name was signed to the conditional sales contract? The two then lived together as husband and wife. The subject of purchase was a pleasure car, now well nigh considered a family necessity. In respect to the needs of the family, the one spouse often acts as the agent of the other. The law is pretty well settled that parol testimony is admissible to identify or show the actual vendee in a contract of this sort. Wm. Lindeke Land Co. v. Levy, 76 Minn. 364, 79 N. W. 314; J. B. Streeter, Jr. Co. v. Janu, 90 Minn. 393, 96 N. W. 1128; Pleins v. Wachenheimer, 108 Minn. 342, 122 N. W. 166, 133 A. S. R. 451; Davidson v. Hurty, 116 Minn. 280, 133 N. W. 862, 39 L.R.A.(N.S.) 324; Curtis v. N. W. Bedding Co. 121 Minn. 288, 141 N. W. 161, 162; Ristvedt v. Watters, 146 Minn. 146, 178 N. W. 166; Drabek v. Wedrickas, 182 Minn. 217, 234 N. W. 6. But it would seem that, for the purpose of this lawsuit, it is not so important to ascertain who was the actual vendee at the time the contract was signed as to establish the fact of whether or not plaintiff held the vendee's right and title when defendant took the car from her. If plaintiff had then fully paid the purchase price—defendant had received and receipted to her for $676 (this amount includes $9 penalties exacted)—there was a conversion when the car was repossessed. The same would be true if in the early days of October, 1929, when the defendant well knew that plaintiff was the owner of the vendee's interest in the car, it agreed to extend the payment of any amount unpaid until October 16, 1929. Novak v. Breitman, 183 Minn. 254, 236 N. W. 221; McCarron v. Commercial Credit Trust, 167 Minn. 322, 209 N. W. 15; Reinkey v. Findley Elec. Co. 147 Minn. 161, 180 N. W. 236. Whether Wiley signed A. Saunders' name to the contract or whether Saunders did so personally may have perplexed the jury, but it does not appear to change the legal aspect of the case whether the signature was affixed by one or the other. The conflict on that point gave the jury occasion to conclude that either plaintiff's husband or else she and Wiley were wilfully and knowingly testifying untruthfully.

Closely connected with the admissibility of oral testimony identifying the real vendee is the admissibility of oral testimony that the price named in the conditional sales contract was not the price that the parties agreed should be inserted therein. Plaintiff in her complaint alleged that the agreed price for the Graham-Paige car was $1,010, the down payment $335, and the balance $675, to be paid in equal monthly instalments, this price to include the cost of financing the deal and the insurance; that this agreément was to be reduced to writing on the regular conditional sales forms used by the Powers Motor Company; that since plaintiff's husband was employed he was to sign the contract in blank, and she authorized him so to do; that the Powers Motor Company agreed to fill in the contract pursuant to the agreement and to send plaintiff a copy thereof; but that no copy was received by her. There is no direct allegation of fraud in inserting a different price and terms from those agreed upon; but if in fact it was not filled in as so agreed it did not bind or conclude plaintiff. As between the parties to the contract signed by the one in blank under an agreement that the other would thereafter fill in the blanks, there can be no doubt that parol evidence is admissible to prove the terms agreed upon. In such a case the one who is to fill the blanks is regarded as the agent of the signer in blank. As between a principal and his agent, it is always open to show the extent of the authority given and whether the agent conformed therewith. 5 Wigmore, Evidence (2 ed.) § 2419, says:

"As against the *person filling the blank,* the maker is of course chargeable with such terms as accord with his own authority or consent, and is not chargeable with any other terms."

As above stated, it was admitted that the conditional sales contract was blank as to price and terms when the name A. Saunders was subscribed thereto. Plaintiff was without even a common school education. She testified she could not say whether the figures 12 and $66.70 were in the promissory note when that instrument was signed. If she had observed those figures and could have calculated that the product would have been $800.40, she would have

known that there was something wrong about the balance of the price being $675. On the other hand, there is something unreasonable in a reputable dealer selling a car that had been used as a demonstrator for several months at the same price as a new one, and, in addition, the purchaser to pay $125 for financing $675 for a year. However, it was for the jury to say what price the parties had agreed should be inserted in the contract.

Defendant contends that it is in the position of a *bona fide* innocent assignee of the vendor, and that as to it plaintiff is estopped to show that the contract was not filled in as authorized or according to the agreement. There is no doubt that if the proof had shown that defendant was an innocent assignee that parted with its money in reliance on the terms and price stated in the contract the question of estoppel would have been for the jury. Dobbin v. Cordiner, 41 Minn. 165, 42 N. W. 870, 4 L. R. A. 333, 16 A. S. R. 683; Moffett v. Parker, 71 Minn. 139, 73 N. W. 850, 70 A. S. R. 319; Schauble v. Hedding, 138 Minn. 187, 164 N. W. 808; Hedding v. Schauble, 146 Minn. 95, 177 N. W. 1019; Snicker v. Byers, 176 Minn. 541, 224 N. W. 152; Hurlburt v. Walker, 258 N. Y. 8, 179 N. E. 34. The difficulty with this defense is that it was neither pleaded, nor proved, nor requested to be submitted to the jury. Plaintiff tendered the issue that the blanks in the contract were not filled in as agreed. Defendant's answer was virtually a general denial. No issue of innocent purchaser or estoppel was raised. No evidence was offered as to how or under what conditions defendant succeeded to the vendor's interest. The only witness for defendant, aside from A. Saunders, was the manager of the Minneapolis branch, who came to this state months after the transfer of the conditional sales contract by the Powers Motor Company to defendant. However, it does appear that after defendant repossessed the car it turned it back to the Powers Motor Company and demanded and received from the latter $163.06, the precise amount it demanded of plaintiff and including the amount paid the garage for repairs and storage. This was done pursuant to some preëxisting arrangement between the Powers Motor Company and defendant. Evidence of such preëxisting agreement under which defendant financed sales for the Powers Motor

278

Company goes far to show that defendant could not well come into the class of innocent purchasers who could invoke estoppel against plaintiff.

It is not deemed necessary to discuss all the alleged erroneous rulings in respect to testimony received or excluded. The more important are already noted. The invoice, exhibit D, was properly received. It bore on the price. No harm could come from a refusal to let defendant explain the letters "C. C. T." appearing thereon, for plaintiff admitted that the sale had to be financed. Plaintiff as vendee could testify to the value of the car, and her other witnesses as to value qualified. Objection was raised as to the insufficiency of the tender of payment made by Friedman in behalf of plaintiff. It is enough to say that the trial court regarded it insufficient and did not submit that issue to the jury. We have examined the other rulings challenged but discover nothing that would justify setting aside the verdict which the learned trial court has approved.

The order is affirmed.

